1

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8                      CENTRAL DISTRICT OF CALIFORNIA

9

10

11   RHONDA L. CISNEROS,            )      No. EDCV 07-1045-RC
                                    )
12              Plaintiff,          )
                                    )      OPINION AND ORDER
13        v.                        )
                                    )
14   MICHAEL J. ASTRUE,             )
     Commissioner of Social Security, )
15                                  )
                Defendant.          )
16   _____ )

17

18        Plaintiff Rhonda L. Cisneros filed a complaint on August 17,

19   2007, seeking review of the Commissioner's decision denying her

20   application for disability benefits.  The Commissioner answered the

21   complaint on February 5, 2008, and the parties filed a joint

22   stipulation on March 19, 2008.

23

24                              **BACKGROUND**

25                                   **I**

26        On December 18, 2002, plaintiff applied for disability benefits

27   under the Supplemental Security Income program ("SSI") of Title XVI of

28   the Act, 42 U.S.C. § 1382(a), claiming an inability to work since

September 30, 2001, due to migraine headaches, back pain, depression, and memory loss.   Certified Administrative Record ("A.R.") 55-57, 64. The plaintiff's application was initially denied on May 8, 2003, and was denied again on July 3, 2003, following reconsideration.   A.R. 32-40.   On February 28, 2005, plaintiff requested an administrative hearing, which was held before Administrative Law Judge Lowell Fortune ("the ALJ") on September 19, 2006.[1]   A.R. 50-51, 415-68.   On December 22, 2006, the ALJ issued a decision finding plaintiff is not disabled.   A.R. 9-20.   The plaintiff appealed the decision to the Appeals Council, which denied review on June 25, 2007.   A.R. 5-8, 393, 412-14.

## II

The plaintiff, who was born on October 20, 1958, is currently 50 years old.   A.R. 55, 418.   She has a tenth-grade education and previously worked as a cashier, a dispatcher, an inspector, a clerk, and a waitress.   A.R. 65, 70, 73-80, 398, 403, 418-20.

The plaintiff has a history of mental health problems dating back to 2003,[2] when she began receiving therapy with a mental health professional in Albuquerque, New Mexico.[3]   A.R. 119.   On April 8, 2003, Gerald Fredman, M.D., a psychiatrist, examined plaintiff,

---

[1]   The ALJ found good cause for plaintiff's tardy administrative hearing request.   A.R. 12.

[2]   Although plaintiff has both mental and physical problems, this opinion focuses on plaintiff's mental health complaints.

[3]   These medical records are not part of the administrative record.

2

diagnosed her with post-traumatic stress disorder and agoraphobia, and determined plaintiff's Global Assessment of Functioning ("GAF") was 50.[4]  A.R. 119-22.  Dr. Fredman found plaintiff "has a history consistent with post-traumatic stress disorder related to childhood abuse and neglect.  The abuse was both physical and sexual."  A.R. 121.  "The physical abuse was by her mother and the sexual abuse (rapes) was from [her] mother's old boyfriends.  The first rape was at age 9, the second at 12, and the third at 14[;] two of the men were boyfriends of her mother and the third one was a friend of [her] mother."  A.R. 119.  Dr. Fredman concluded:

> From a psychiatric perspective there would be mild
> limitations understanding and remembering basic
> instructions.  There would be mild limitations with
> concentration.  There would be moderate limitations adapting
> to changes in a workplace.  There would be moderate
> limitations persisting [in] a task of basic work.  There
> would be marked limitations interacting with the general
> public, co-workers and supervisors.  She is probably capable

---

[4]  A GAF score reflects "the clinician's judgment of the individual's overall level of functioning" regarding only psychological, social and occupational functioning but not considering physical or environmental limitations.  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. (Text Revision) 2000); Langley v. Barnhart, 373 F.3d 1116, 1122-23 n. 3 (10th Cir. 2004).  A GAF of 50 means the individual exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

1    of handling whatever funds are due her.

2

3   A.R. 122.  Dr. Fredman further opined plaintiff was: "markedly

4   limited"[5] in her ability to interact with the public, co-workers, and

5   supervisors; "moderately limited"[6] in her ability to work without

6   supervision, adapt to workplace changes, and use public transportation

7   or travel to unfamiliar places; "mildly limited"[7] in her ability to

8   understand and remember detailed instructions, carry out instructions,

9   attend and concentrate, and be aware of normal hazards and react

10  appropriately; and "not limited" in her ability to understand and

11  remember very short and simple instructions.  A.R. 130-32.

12

13      On May 1, 2003, nonexamining psychiatrist E. Ching, M.D., opined

14  plaintiff has an anxiety-related disorder that causes "mild"

15  restriction in her activities of daily living, "moderate" difficulty

16  maintaining social functioning, and "mild" difficulties maintaining

17  concentration, persistence or pace, and has caused no episodes of

18  decompensation.  A.R. 138-51.  Dr. Ching also opined plaintiff is

19  "markedly limited" in her ability to interact appropriately with the

20  general public, "moderately limited" in her ability to: work in

21  _____

22      [5]  In this regard, "markedly limited" means "the evidence
    supports the conclusion that the individual cannot usefully
23  perform or sustain the activity."  A.R. 130.

24      [6]  "Moderately limited" means "[t]he evidence supports the
    conclusion that the individual's capacity to perform the activity
25  is impaired but the degree/extent of the impairment needs to be
    further described."  Id.
26

27      [7]  "Mildly limited" means "[t]he effects of the mental
    disorder do not significantly limit the individual from
28  consistently and usefully performing the activity."  Id.

4

coordination with or proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation; and otherwise not significantly limited.  A.R. 134-37.  Dr. Ching concluded plaintiff can do non-public type work. A.R. 136.  On July 3, 2003, another nonexamining physician affirmed Dr. Ching's opinions.  A.R. 136, 138.

On January 10, 2005, plaintiff was examined at the Riverside County Community Health Agency, where she was diagnosed with depression and referred for mental health treatment.  A.R. 190.  On January 18, 2005, plaintiff was hospitalized at the Hemet Valley Medical Center ("HVMC"), where Timothy Almquist, M.D., diagnosed her as having depression, with suicidal ideation, and anxiety.  A.R. 172-73.  On January 19, 2005, Julie Wareham, M.D., examined plaintiff and diagnosed her with single episode, severe major depression and post-traumatic stress disorder without psychosis, and determined plaintiff's GAF was 25.[8]  A.R. 177-80.  Dr. Wareham described plaintiff as disheveled, sad, depressed, and expressing suicidal ideations of walking in front of a car; but also noted plaintiff was

_____

    [8]  A GAF of 21-30 means that the individual's "[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately), suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

alert and oriented (x3), had no racing thoughts or homicidal ideations and her memory and attention were intact.  A.R. 177-79.  Dr. Wareham prescribed medication to plaintiff, and noted plaintiff stated she had not been taking medication because she could not afford it.  A.R. 170, 177.  Dr. Wareham discharged plaintiff from HVMC on January 26, 2005, at which time plaintiff's GAF was 38.[9]  A.R. 170-71.

On February 10, 2005, E. Leonard, M.D., examined plaintiff at the Riverside County Department of Mental Health, diagnosed her with recurrent major depression and prescribed medication.  A.R. 220, 225-29.  The plaintiff continued to receive treatment.  A.R. 198-224.

On April 4, 2005, plaintiff was again admitted to HVMC, where Richard B. Mantell, M.D., examined her and diagnosed her as having depression with suicidal ideation and a history of bipolar disorder. A.R. 157-58.  On April 5, 2005, plaintiff, who was again voicing suicidal ideations, was diagnosed with bipolar disorder and prescribed medication.  A.R. 155, 162-65.  Plaintiff remained hospitalized at HVMC until April 11, 2005, when Dr. Wareham discharged her with a diagnosis of bipolar disorder, without psychotic features.  A.R. 155-56.

---

[9]   A GAF of 31-40 indicates an individual has "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

On April 12, 2006, Harrell Reznick, Ph.D., a clinical psychologist, examined plaintiff, conducted psychological testing, and diagnosed plaintiff as having an unspecified mood disorder and an unspecified personality disorder.  A.R. 238-48.  Dr. Reznick noted plaintiff "presented with what appeared to be a sub-optimal effort throughout this evaluation, resulting in test performances that seem to underestimate her actual levels of functioning."  A.R. 238.  Dr. Reznick further noted plaintiff "presented with some signs and symptoms of depression, although she appeared to exaggerate them during this evaluation, apparently for self-serving reasons."  A.R. 239.  Dr. Reznick concluded:

> [Plaintiff] can perform simple and repetitive tasks with minimal supervision and is able to perform these tasks with appropriate persistence and pace over a normal work cycle. She is able to understand, remember and carry out at least simple to moderately complex verbal instructions without difficulty.  She would experience mild difficulties tolerating ordinary work pressures and mild difficulties interacting with others in the workplace.  She can observe basic work and safety standards in the workplace without difficulty.  She is also capable of handling her own financial affairs independently.

A.R. 244-48.

On December 16, 2006, plaintiff was taken by ambulance to, and admitted at, the Riverside County Regional Medical Center under

1  California Welfare & Institutions Code § 5150,[10] diagnosed with

2  bipolar disorder II, and prescribed medication.  A.R. 359-92.  On

3  December 17, 2006, plaintiff was discharged to her mother's care.

4  A.R. 376.

5

6                            **DISCUSSION**

7                               **III**

8      The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

9  review the Commissioner's decision denying plaintiff disability

10  benefits to determine if his findings are supported by substantial

11  evidence and whether the Commissioner used the proper legal standards

12  in reaching his decision.  Stubbs-Danielson v. Astrue, 539 F.3d 1169,

13  1172 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d

14  1155, 1159 (9th Cir. 2008).

15

16      The claimant is "disabled" for the purpose of receiving benefits

17  under the Act if she is unable to engage in any substantial gainful

18  activity due to an impairment which has lasted, or is expected to

19  _____

20      [10]  Section 5150 provides, in pertinent part:

21      When any person, as a result of mental disorder, is a
22      danger to others, or to himself or herself, or gravely
        disabled, a peace officer, member of the attending
23      staff . . . of an evaluation facility designated by the
        county, designated members of a mobile crisis team
24      . . . , or other professional person designated by the
        county may, upon probable cause, take, or cause to be
25      taken, the person into custody and place him or her in
        a facility designated by the county and approved by the
26      State Department of Mental Health as a facility for 72-
27      hour treatment and evaluation.

28  Cal. Welf. & Inst. Code § 5150.

                              8

last, for a continuous period of at least twelve months.  42 U.S.C. §
1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the
burden of establishing a prima facie case of disability."  Roberts v.
Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
(1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

    The Commissioner has promulgated regulations establishing a five-
step sequential evaluation process for the ALJ to follow in a
disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ
must determine whether the claimant is currently engaged in
substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the
**Second Step**, the ALJ must determine whether the claimant has a severe
impairment or combination of impairments significantly limiting her
from performing basic work activities.  20 C.F.R. § 416.920(c).  If
so, in the **Third Step**, the ALJ must determine whether the claimant has
an impairment or combination of impairments that meets or equals the
requirements of the Listing of Impairments ("Listing"), 20 C.F.R. §
404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the
**Fourth Step**, the ALJ must determine whether the claimant has
sufficient residual functional capacity despite the impairment or
various limitations to perform her past work.  20 C.F.R. § 416.920(f).
If not, in **Step Five**, the burden shifts to the Commissioner to show
the claimant can perform other work that exists in significant numbers
in the national economy.  20 C.F.R. § 416.920(g).

    Moreover, where there is evidence of a mental impairment that may
prevent a claimant from working, the Commissioner has supplemented the
five-step sequential evaluation process with additional regulations

addressing mental impairments.  Maier v. Comm'r of the Soc. Sec.
Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).  First, the
ALJ must determine the presence or absence of certain medical findings
relevant to the ability to work.  20 C.F.R. § 416.920a(b)(1).  Second,
when the claimant establishes these medical findings, the ALJ must
rate the degree of functional loss resulting from the impairment by
considering four areas of function: (a) activities of daily living;
(b) social functioning; (c) concentration, persistence, or pace; and
(d) episodes of decompensation.  20 C.F.R. § 416.920a(c)(2-4).  Third,
after rating the degree of loss, the ALJ must determine whether the
claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d).
Fourth, when a mental impairment is found to be severe, the ALJ must
determine if it meets or equals a Listing.  20 C.F.R. §
416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then
perform a residual functional capacity assessment, and the ALJ's
decision "must incorporate the pertinent findings and conclusions"
regarding plaintiff's mental impairment, including "a specific finding
as to the degree of limitation in each of the functional areas
described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ
found plaintiff has not engaged in substantial gainful activity since
her alleged onset date, September 1, 2001.  (Step One).  The ALJ then
found plaintiff has the severe impairments of chronic migraine
headaches, gastroesophageal reflux disease, a back disorder, a neck
disorder, a thyroid disorder, and post-traumatic stress disorder (Step
Two); however, she does not have an impairment or combination of
impairments that meets or equals a Listing.  (Step Three).  The ALJ

next determined plaintiff cannot perform her past relevant work.
(Step Four).  Finally, the ALJ found plaintiff can perform a
significant number of jobs in the national economy; therefore, she is
not disabled.  (Step Five).


                              **IV**

    A claimant's residual functional capacity ("RFC") is what she can
still do despite her physical, mental, nonexertional, and other
limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);
Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,
the ALJ found:


        [Plaintiff] has the [RFC] to perform a significant range of

        light work.[11]  Specifically, [she] is able to lift and

        carry 10 pounds frequently and 20 pounds occasionally, and

        to sit for 6 hours in an 8-hour workday and stand and/or

        walk for a total of 6 [hours] as well.  She is able to climb

        a ramp or stairs frequently, but not a ladder, rope, or

        scaffolding.  She is able to balance, bend, stoop, crouch,

_____

        [11]  Under Social Security regulations, "[l]ight work
involves lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds.  Even
though the weight lifted may be very little, a job is in this
category when it requires a good deal of walking or standing, or
when it involves sitting most of the time with some pushing and
pulling of arm or leg controls.  To be considered capable of
performing a full or wide range of light work, you must have the
ability to do substantially all of these activities."  20 C.F.R.
§ 416.967(b).  "[T]he full range of light work requires standing
or walking for up to two-thirds of the workday."  Gallant v.
Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983
WL 31251, *6.

1   and kneel or squat frequently; and to crawl occasionally.

2   The [plaintiff] is limited to even moderate exposure to

3   hazards such as dangerous or fast-moving machinery and

4   unprotected heights.  She is also limited to even moderate

5   exposure to fumes, odors, gases, and chemicals.  The

6   [plaintiff] should avoid all exposure to extreme noise and

7   bright lighting.  She cannot operate motorized vehicles or

8   equipment.  Mentally, the [plaintiff] is able to understand

9   and remember moderately detailed instructions, and [she] can

10  carry out moderately complex tasks.  She cannot work at a

11  production-rate pace or perform work that requires hyper-

12  vigilance.  She can "frequently" interact appropriately with

13  coworkers, supervisors, and the public.  She cannot assume

14  any responsibility for coworkers or safety operations.

15

16  A.R. 15 (footnote added).  However, plaintiff contends the ALJ's RFC

17  and Step Five determinations are not supported by substantial evidence

18  because, among other reasons, the ALJ did not properly assess her

19  mental limitations, including the opinions of Dr. Fredman and Dr.

20  Ching.  The plaintiff is correct.

21

22      The ALJ "must provide 'clear and convincing' reasons for

23  rejecting the uncontradicted opinion of an examining physician[,]"

24  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Widmark v.

25  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006), and "[e]ven if

26  contradicted by another doctor, the opinion of an examining doctor can

27  be rejected only for specific and legitimate reasons that are

28  supported by substantial evidence in the record."  Regennitter v.

1  Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir.

2  1999); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir.

3  2008).   Similarly, the ALJ may only reject "the opinion of a

4  nonexamining physician by reference to specific evidence in the

5  medical record."   Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir.

6  1998).

7

8      Here, in assessing plaintiff's limitations, Dr. Fredman opined

9  plaintiff is "markedly limited" in her ability to interact with the

10  public, co-workers and supervisors, meaning plaintiff "cannot usefully

11  perform or sustain the activity."   A.R. 122, 130-31.   Similarly, Dr.

12  Ching opined plaintiff is "markedly limited" in her ability to

13  interact appropriately with the general public, and requires non-

14  public work.   A.R. 135-36.   Contrary to these opinions, however, the

15  ALJ found plaintiff retains the RFC to "'frequently' interact

16  appropriately with coworkers, supervisors, and the public[,]" A.R. 15,

17  without explaining why he was disagreeing with Drs. Fredman and Ching.

18  The ALJ's failure to provide any explanation for rejecting the

19  opinions of Drs. Fredman and Ching is clear legal error.   Lingenfelter

20  v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007); Stoner v. Comm'r

21  of Soc. Sec., 239 Fed. Appx. 359, 360 (9th Cir. 2007).[12]

22

23      Because the ALJ failed to provide any reasons for rejecting Dr.

24  Fredman's opinions, this Court credits them as a matter of law.

25  Widmark, 454 F.3d at 1069; Edlund v. Massanari, 253 F.3d 1152, 1160

26  (9th Cir. 2001).   As such, and given the ALJ's legal error, the ALJ's

27

28      [12]  See Fed. R. App. P. 32.1(a); Ninth Circuit Rule 36-3(b).

13

Step Five determination that plaintiff can perform a significant

number of jobs in the national economy, which was based on the

testimony of vocational expert ("VE") Corrine Porter in response to a

hypothetical question stating, in part, plaintiff "[i]s frequently

able to interact with co-workers and with supervisors" and the public,

A.R. 19-20, 458-61, is not supported by substantial evidence.  See

Carmickle, 533 F.3d at 1166 ("[B]ecause the ALJ erred in excluding

some of [the claimant's] limitations from the RFC assessment . . . ,

and thus from the VE hypothetical, the VE's testimony 'has no

evidentiary value.'" (citations omitted)); Edlund, 253 F.3d at 1160

(ALJ erred in not including limitations from claimant's mental

impairment in hypothetical question posed to vocational expert).

**V**

When the Commissioner's decision is not supported by substantial

evidence, the Court has authority to affirm, modify, or reverse the

Commissioner's decision "with or without remanding the cause for

rehearing."  42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072,

1076 (9th Cir. 2002).  "Generally when a court . . . reverses an

administrative determination, 'the proper course, except in rare

circumstances, is to remand to the agency for additional investigation

or explanation.'"  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir.

2004) (citations omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th

Cir. 2004).  "In cases where the testimony of the vocational expert

has failed to address a claimant's limitations as established by

improperly discredited evidence, [the Ninth Circuit] consistently

ha[s] remanded for further proceedings rather than payment of

benefits."  Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.), cert.

1  denied, 531 U.S. 1038 (2000); Vasquez v. Astrue, __ F.3d __, 2008 WL

2  4791860, *7 (9th Cir. (Cal.)).  Therefore, remand is appropriate

3  here.[13]

4

5                              **ORDER**

6      IT IS ORDERED that: (1) plaintiff's request for relief is

7  granted; and (2) the Commissioner's decision is reversed, and the

8  action is remanded to the Social Security Administration for further

9  proceedings consistent with this Opinion and Order, pursuant to

10  sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered

11  accordingly.

12

13  DATE: November 26, 2008            /S/ Rosalyn M. Chapman
                                    ROSALYN M. CHAPMAN
14                                  UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25  ────────────────

26      [13]  Having reached this conclusion, the Court need not
    address the other claims plaintiff makes, none of which warrant
27  greater relief than herein granted.

28  R&R-MDO\07-1045.mdo
    11/26/08